**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,**<br>    **Plaintiffs,**<br><br>    v.<br><br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0253** |
| **HELEN SHIRLEY, et al.,**<br>    **Plaintiffs,**<br><br>    v.<br><br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0259** |
| **MARY L. MOORHEAD, et al.,**<br>    **Plaintiffs,**<br><br>    v.<br><br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0260** |
| **BEECHER COTTON, et al.,**<br>    **Plaintiffs,**<br><br>    v.<br><br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>    **Defendants.** | **Civil Action No. 2021-0261** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**
**<u>AND RELATED RELIEF</u>**

# TABLE OF CONTENTS

I.      LITIGATION OVERVIEW ................................................................................. 2

II.     TERMS OF THE PROPOSED SETTLEMENT ................................................. 5

III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 6

   A.    Rule 23(a) Is Satisfied ................................................................................. 7

      1.   Numerosity Is Satisfied ............................................................................ 7

      2.   Commonality Is Satisfied ......................................................................... 8

      3.   Typicality Is Satisfied ............................................................................. 9

      4.   Adequacy Is Satisfied ............................................................................. 9

   B.    The Requirements of Rule 23(b)(3) Are Satisfied ....................................... 10

      1.   Common Legal and Factual Questions Predominate Plaintiffs' Claims ..... 10

      2.   A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication. ........... 12

   C.    Co-Lead Counsel Should Be Appointed as Class Counsel ............................ 12

   D.    The Proposed Settlement Is Sufficiently Fair, Reasonable, and Adequate to Warrant
Preliminary Approval and Authorize Dissemination of Notice ............................... 13

     (1)  The Settlement Is the Product of Arms-Length Negotiations By Counsel Who
Adequately Represented the Class .................................................................. 15

     (2)  The Relief Provided Is Adequate and Will Be Fairly Allocated. ................... 16

         (a)The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and
Delay of Trial and Appeal .............................................................................. 16

         (b)........The Proposed Method of Processing Claims and Distributing Relief Is Fair and
Effective and Treats Class Members Equitably Relative to Each Other ..................... 17

         (c) ..................................... The Terms of the Proposed Attorneys' Fees are Appropriate.
.................................................................................................................. 18

IV.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED AND EPIQ

SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR ....................... 18

V.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ............................ 20

VI.    CONCLUSION ........................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
2023 WL 4139151 (E.D. Pa. June 22, 2023) ........................................................18

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...............................................................................................7

*Austin v. Penn. Dep't of Corrs.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ......................................................................14

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ...................................................................................9

*Boynes v. Limetree Bay Ventures, LLC*,
110 F.4th 604 (3d. Cir. 2024) ................................................................................3

*In re Bulk (Extruded) Graphite Antitrust Litig.*,
2006 WL 891362 (D.N.J. Apr. 4, 2006) ................................................................7

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
2017 WL 2829599 (D.N.J. June 30, 2017) ..........................................................19

*In re Computron Software, Inc.*,
6 F. Supp. 2d 313 (D.N.J. 1998) ..........................................................................17

*Curiale v. Lenox Grp., Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .......................................................13

*In re Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017) .............................................................................9

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995) ...................................................................................14

*Esslinger v. HSBC Bank Nevada, N.A.*,
No. 10-3213, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) .................................16

*In re Fasteners Antitrust Litig.*,
2014 WL 285076 (E.D. Pa. Jan 24, 2014) ..............................................................9

*In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*,
2023 WL 4551435 (D.N.J. July 13, 2023) ............................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig,*
  55 F.3d 768 (3d Cir. 1995) ...................................................................................14

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ...................................................................................15

*In re Humanigen, Inc. Sec. Litig.,*
  2024 WL 4182634 (D.N.J. Sept. 13, 2024) ...........................................................19

*In re Ins. Brokerage Antitrust Litig.,*
  297 F.R.D. 136 (D.N.J. 2013) .................................................................................19

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009) ...................................................................................10

*Jones v. Commerce Bancorp, Inc.,*
  2007 WL 2085357 (D.N.J. July 16, 2007) ..............................................................14

*Katz v. DNC Servs. Corp.,*
  2023 WL 2955887 (E.D. Pa. Apr. 14, 2023) ..........................................................18

*In re Linerboard Antitrust Litig.,*
  203 F.R.D. 197 (E.D. Pa. 2001), aff'd, 305 F.3d 145 (3d Cir. 2002) ............7, 8, 14

*In re Mercedes-Benz Antitrust Litig.,*
  213 F.R.D. 180 (D.N.J. 2003) .................................................................................10

*In re Modafinil Antitrust Litig.,*
  837 F.3d 238 (3d Cir. 2016) .....................................................................................8

*In re NFL Players,*
  961 F. Supp. 2d at 714 .....................................................................................14, 15

*In re NFL Players' Concussion Inj. Litig.,*
  301 F.R.D. 191 (E.D. Pa. 2014) ............................................................................6, 7

*In re NFL Players Concussion Inj. Litig.,*
  775 F.3d 570 (3d Cir. 2014) .....................................................................................7

*In re NFL Players Concussion Inj. Litig.,*
  821 F.3d 410 (3d Cir. 2016) .............................................................................12, 19

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.,*
  347 F.R.D. 113 (W.D. Pa. 2024) ............................................................................17

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*,

    148 F.3d 283 (3d Cir. 1998)................................................................8

*Stechert v. Travelers Home & Marine Ins. Co.*,

    2021 WL 5235221 (E.D. Pa. Nov. 9, 2021) ...............................7, 9, 19, 20

*Sullivan v. DB Invs., Inc.*,

    667 F.3d 273 (3d Cir. 2011).........................................10, 11, 12, 17

*Tyson Foods, Inc. v. Bouaphakeo*,

    577 U.S. 442 (2016)......................................................................11

*In re Vitamins Antitrust Litig.*,

    209 F.R.D. 251 (D.D.C. 2002)....................................................10

**Statutes**

Dema Law .................................................................................13

FLSA .......................................................................................18

**Other Authorities**

Fed. R. Civ. P. 23(a)(3).................................................................9

Fed. R. Civ. P. 23(c)(2)(B) ......................................................18, 19

Fed R. Civ. P. 23(e)(1)..................................................................7, 14

Fed. R. Civ. P. 23(e)(1) and (2).......................................................14

Fed. R. Civ. P. 23(e)(2)(A) and (B).................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iii).......................................................18

Fed R. Civ. P. 23(g)(1)(A)............................................................13

Federal Rule of Civil Procedure 23(e) ..............................1, 7, 14, 18

Rule 23 ..............................................................................9, 19, 20

Rule 23(a)...............................................................................7, 8

Rule 23(a)(2)...............................................................................8

Rule 23(a)(4)...........................................................................9, 10

Rule 23(a) and (b).........................................................................7

Rule 23(b)(3)...................................................................10, 11, 12, 18

Rule 23(b)(3)'s.............................................................................10

Rule 23(e)(2)...........................................................................14, 15

Rule 23(e)(2)(A)–(B)....................................................................16

Rule 23(e)(3) ................................................................................................................13

Rule 23(g) ..................................................................................................................12

Rules 23(a) and 23(b)....................................................................................................7

Plaintiffs,[1] on behalf of themselves and the proposed Settlement Class defined below, file this Motion seeking preliminary approval of a $17.5 million Settlement that will resolve all of their claims against the Settling Defendants, Defendants ArcLight Capital Partners, LLC; ArcLight Energy Partners Fund VI, L.P.; ArcLight Limetree AIV, L.P.; Limetree Bay Holdings, LLC; Limetree Bay Preferred Holdings, LLC; and Freepoint Commodities LLC (collectively, the "Settling Defendants") arising out of, or relating to, the series of environmental releases from the Limetree Bay Refinery that occurred during the time period from February 2021 to May 2021.

This Settlement has been reached only after Plaintiffs, through Class Counsel, thoroughly investigated the facts and law relating to the allegations in the Litigation and conducted extensive discovery. The Settling Parties engaged in extensive, difficult, complex, and arm's length-negotiations, including through mediation overseen by the Court-appointed mediator, John W. Perry, Jr. Plaintiffs and Settling Defendants have reached a class action settlement, the first such settlement in the Litigation. Plaintiffs' claims continue against eleven other non-Settling Defendants, including Limetree Bay Terminals, LLC ("LBT"). Plaintiffs recently filed a motion to amend their consolidated class complaint on February 27, 2025, expanding both the number of defendants (by adding Limetree Bay Refining, LLC ("LBR"), and Limetree Bay Energy, LLC) and allegations of wrongdoing by those and other remaining parties to the case.

Plaintiffs now seek to begin the settlement approval process mandated by Federal Rule of Civil Procedure 23(e). Plaintiffs respectfully request that the Court enter the Proposed Preliminary Approval Order (1) conditionally certifying the Settlement Class and preliminarily approving the

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the Settlement Agreement attached hereto as Exhibit A. Additional exhibits to this motion are Exhibit B ("Claim Form"), Exhibit C ("Claimant Payment Formula"), Exhibit D ("Long Form Notice"), Exhibit E ("Summary Notice"), Exhibit F ("Preliminary Approval Order"), and Exhibit G ("Declaration of Cameron R. Azari, Esq Regarding Notice Plan," or "Epiq Declaration," the proposed Settlement Administrator).

Settlement as fair, reasonable and adequate; (2) finally appointing the already-appointed Co-Lead Class Counsel to represent the Settlement Class; (3) approving the proposed Notice Plan; (4) establishing the Objection and Opt-Out Deadline; (5) appointing Epiq, which has already been appointed to administer the injunctive water program, as the Settlement Administrator; and (6) setting a date for the Final Approval Hearing.

## I.    LITIGATION OVERVIEW

This case stems from the failed February 1, 2021 restart of the Limetree Bay Refinery. Within four days of the Refinery's restart, on February 4, 2021, the Refinery malfunctioned. The Refinery again malfunctioned on April 23, May 5, and May 12, culminating in a "flare out" that resulted in an EPA-ordered shutdown of the Refinery.

In their operative complaint, filed March 5, 2024, Plaintiffs allege that the Refinery's failed restart is the direct result of rushed, inadequate, intentional, reckless, and negligent actions taken by each Defendant in the Litigation, including Settling Defendants. Plaintiffs seek redress for property owners, employees, businesses, and residents who lived, worked, or were present in the Affected Geographic Area. Settling Defendants vigorously dispute these allegations, and do not concede any liability in seeking to settle Plaintiffs' claims.

In the nearly four years since the four lawsuits that have since been consolidated in the above-captioned litigation were filed, Plaintiffs and their counsel have diligently prosecuted their claims, allowing them to weigh the adequacy of the Settlement against the costs, risks, and delay of continuing to litigate the claims against Settling Defendants through trial and appeal. What follows is a brief background of Plaintiffs' efforts.

Two months after the EPA shutdown, Limetree Bay Refinery filed for bankruptcy protection. Dkt. 48. The class action suits that Plaintiffs had filed weeks earlier were thus stayed

pending the resolution of that bankruptcy. *See, e.g.*, Dkts. 68, 80, 82. Plaintiffs, through counsel, immediately took action to protect their rights in the bankruptcy. Plaintiffs participated in a lengthy mediation in the bankruptcy, one result of which was a water program to provide clean water to residents whose drinking and household water sources were impacted by the releases. Plaintiffs also engaged separate bankruptcy counsel, who ensured that Plaintiffs' rights were preserved through the filing of hundreds of individual claim notices and, ultimately, a negotiated provision in LBR's confirmed Chapter 11 plan that preserved Plaintiffs' right to pursue claims against the debtor's insurance estate. Plaintiffs and their counsel have continued to work within the bankruptcy and negotiated with the liquidating trustee to resolve the individual claims asserted against the bankruptcy estate and to attempt to obtain insurance coverage for Plaintiffs' claims against LBR.

After the stay was lifted, Plaintiffs and their counsel resumed prosecution of their claims in this litigation. In January 2023 because the water program had not been continued by defendants, Plaintiffs moved for a preliminary injunction requiring LBT to provide class members with safe, clean, potable water. Dkts. 121, 141, 142. This Court held a two-phase hearing, over eight days, and held that Plaintiffs satisfied the preliminary injunction factors as to Plaintiffs and putative class members who cannot afford to purchase water without trading off other basic necessities. *See* Dkts. 284, 285, 388, 389. Settling Defendants were not involved in these proceedings.

Plaintiffs obtained this result prior to formal discovery by sending public record requests and reviewing thousands of documents that they utilized to prove their entitlement to the injunctive relief sought. Plaintiffs' counsel also presented testimony from multiple class members and several expert and LBT witnesses. This Court's Orders awarding Plaintiffs the relief sought from Limetree Bay Terminals (not the Settling Defendants) were upheld on appeal by the United States Court of Appeals for the Third Circuit. *Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604, 608 (3d. Cir.

2024) ("Extraordinary harm warrants extraordinary relief.").

While LBT's appeal from the preliminary injunction orders was pending, Plaintiffs and Class Counsel pushed to prosecute the remainder of their claims against all Defendants. In September 2023, Plaintiffs moved to amend their complaints and consolidate the four class action proceedings, relief that this Court granted in March of 2024. Dkts. 453, 526, 527. In May 2024, Defendants, including Settling Defendants, filed motions to dismiss which Plaintiffs, through Class Counsel, opposed the same month. Dkts. 642, 643, 670. In all, Plaintiffs opposed eleven separate memoranda in support of the consolidated motions to dismiss. Dkts. 670-1–11.[2]

Plaintiffs also opposed Defendants' attempt to stay discovery pending resolution of the motions to dismiss, and in June 2024, following the denial of that motion (Dkt. 663) and submission of competing discovery plans, this Court entered a scheduling order commencing discovery and setting a trial date and pre-trial deadlines. Dkt. 677. Plaintiffs then served written discovery on defendants and subpoenas to third parties, which resulted in the production of more than *3.75 million pages of documents by Defendants and more than 1.2 million pages of documents from third parties*. Plaintiffs are diligently analyzing these documents and noticing depositions. And Plaintiffs have engaged top-tier liability, environmental, and damage experts.

Plaintiffs and Settling Defendants were conducting discovery when they began to negotiate a potential settlement. As part of their negotiations, Plaintiffs and Settling Defendants engaged in two in-person mediations—one at the end of 2023, and one in the fall of 2024—with the assistance of the Court-appointed mediator, John W. Perry, Jr. While neither in-person mediation resulted in an immediate settlement, productive negotiations continued with the assistance of the mediator over the next several months through the end of 2024. On or about December 27, 2024, Plaintiffs

---

[2] In addition to a joint motion, Arclight and Freepoint filed their own independent supplemental motions to dismiss. *See* Dkts. 643-4 and 643-6.

and Settling Defendants reached an agreement in principle. Plaintiffs and Settling Defendants then extensively negotiated the final terms of the Settlement and reduced that agreement to writing and executed the Settlement Agreement on March 17, 2025.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Proposed Settlement Class

The Settlement Class is defined as all persons or entities who: (a) owned or rented property (real and/or personal) in the Affected Geographic Area on or after February 3, 2021; or (b) resided, worked, operated a business, or were present in the Affected Geographic Area between February 3, 2021 and May 26, 2021, and includes, without limitation, all persons or entities who are retained clients of any law firms comprising Class Counsel before the date of execution of the Settlement Agreement and who assert claims arising out of the Incidents.[3] Ex. A at § II, ¶ 1(II). The "Affected Geographic Area" means the western portion of the Island of St. Croix, more particularly described as bounded by 64.74 degrees West Longitude and the sea. Ex. A at § II, ¶ 1(A).

### B.    Settlement Consideration and Administration

Plaintiffs and Settling Defendants have come to a fair and reasonable result for the benefit of the Settlement Class. Settling Defendants have agreed to a total payment of $17,500,000.00 (the "Gross Settlement Fund"), Ex. A at § II, ¶ 1(S), to be deposited into the Settlement Escrow Account in exchange for the release of claims as defined in Section VIII of the Settlement Agreement, which includes a release of all claims against the Released Parties (only) on the basis of, arising from, or relating to the claims alleged in the Litigation. Once the Effective Date is reached, ***no portion*** of the Gross Settlement Fund will ever revert to Settling Defendants. Ex. A at § II, ¶¶ 1(S); 3.

The Net Settlement Fund will be distributed to Settlement Class Members with the

---

[3] A Settlement Map of the Affected Geographic Area will be on the Settlement Website.

assistance of a Settlement Administrator. Ex. A at § II, ¶ 1(GG). As set forth in the Claim Payment

Formula and Claim Form, payments to individual Settlement Class Members will be apportioned

fairly using a point system based on the nature of the harm (Property Damages,[4] Nuisance Harm,

Physical Health Manifestations, and other Economic Harm) experienced by each Settlement Class

Member. Each Claimant's point total will be divided by the total points allocated across all Eligible

Claimants and the ensuing ratio will be used to calculate individual distributions on a pro rata

basis. The Claim Form is designed for clarity and to minimize the need for documentary proof,

except as required for certain categories of damages. It will also endeavor to avoid fraud by

utilizing a Confirmation Code in the Summary Notice to be sent to all known addresses in the

Affected Geographic Area.

Co-Lead Class Counsel selected as Settlement Administrator Epiq Class Action & Mass

Tort Solutions ("Epiq"), which is already administering the Limetree Water Distribution Program

and will administer a robust Notice Plan. Ex. A at § VI. Copies of the Settlement, Claim Form, and

related documents will also be available at the local Law Offices of certain Class Counsel. The

Notice Plan provides the best notice practicable under the circumstances. *See* Ex. G at ¶ 44. If

preliminary approval is granted, Co-Lead Class Counsel will work with Epiq to encourage and

assist those in the Affected Geographic Area to receive the benefits of the Settlement Agreement.[5]

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Evaluation of a proposed class action settlement involves a two-step process. First, "the

parties submit the proposed settlement to the court, which must make a preliminary fairness

evaluation." *In re NFL Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

---

[4] The portion of the allocation based on Property Damage will also depend on the claimant's "Zone" within the Affected Geographic Area, as demarcated on the Settlement Map.
[5] The Settlement also includes procedures for Settlement Class Members to object or opt-out of the Settlement to pursue their own litigation. *See* Ex. A at § IX, ¶¶ 26–33.

Second, "after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement…. If the court concludes that the settlement is 'fair, reasonable and adequate,' the settlement is given final approval." *Id.*

To obtain preliminary approval of a settlement and send notice to the Settlement Class, the proponents must show that "the court will likely be able to … certify the class for purposes of judgment on the [settlement] proposal." Fed R. Civ. P. 23(e)(1) (emphasis added); *see also Stechert v. Travelers Home & Marine Ins. Co.*, 2021 WL 5235221 (E.D. Pa. Nov. 9, 2021) (detailing standard for granting preliminary approval of class action settlement); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632 (2005). Thus, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under [Rule] 23(e)." *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (citation omitted). Here, the requirements of Rules 23(a) and 23(b) are both met, and the settlement is fair to the class under Rule 23(e).

## A.    Rule 23(a) Is Satisfied

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.    Numerosity Is Satisfied

Numerosity is satisfied where the proposed class is so large that the traditional joinder of parties would be "'unworkable.'" *In re Bulk (Extruded) Graphite Antitrust Litig.*, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006). In determining numerosity, "'a court may accept common

sense assumptions.'" *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001), aff'd,

305 F.3d 145 (3d Cir. 2002). Generally, if the "'potential number of plaintiffs exceeds 40, the

[numerosity] prong of Rule 23(a) has been met.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238,

250 (3d Cir. 2016). Here, the Settlement Class includes thousands of St. Croix residents who were

impacted by the toxic Release Incidents such that numerosity is easily met.

### 2.    Commonality Is Satisfied

Rule 23(a)(2) requires "questions of law or fact common to the members of the class."

> A finding of commonality does not require that all class members share identical
> claims, and indeed "factual differences among the claims of the putative class
> members do not defeat certification. The commonality requirement will be satisfied
> if the named plaintiffs share at least one question of fact or law with the grievances
> of the prospective class."

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (citation

omitted). The commonality requirement "is easily met because it may be fulfilled by a single

common issue." *Linerboard*, 203 F.R.D. at 205. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme

Court held that this factor is meant to evaluate "the capacity of a class-wide proceeding to generate

common answers apt to drive the resolution of the litigation," and reiterated that "[e]ven a single

[common] question" can satisfy the commonality requirement. 564 U.S. 338, 350, 359 (2011).

There are numerous common issues of law and fact here including whether Settling

Defendants acted negligently, recklessly, or illegally by failing to implement safeguards and

undergo inspections, circumventing ordinary regulatory processes, and rushing the Refinery restart

before undertaking improvements and repairs necessary for safe operations; whether Settling

Defendants' acts and omissions violated the law and/or constituted gross negligence; and whether

Settling Defendants' conduct caused injury to the Plaintiffs and Settlement Class Members. Class-

wide proceeding can generate common answers to these questions. Commonality is met.

### 3.    Typicality Is Satisfied

Rule 23 requires that "the claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). The typicality factor examines "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (cleaned up). "There is a low threshold for typicality; provided the interests of the class and the class representative are aligned, courts will find typicality even when class members' claims are only legally similar, and not factually similar." *Stechert*, 2021 WL 5235221, at *5 (cleaned up). Typicality exists "[i]f the representative's claims and those of the absent class members arise from the same course of conduct and are based on the same legal theories … regardless of factual differences underlying the individual claims." *Wellbutrin XL*, 282 F.R.D. 126, 138 (E.D. Pa. 2011) (citing *Baby Neal*, 43 F.3d at 57–58). Here, each Settlement Class Member's claim arises from the same alleged course of conduct: Settling Defendants' allegedly rushed, inadequate, intentional, reckless, and negligent actions in restarting the Refinery for a time-sensitive commercial opportunity, which caused and contributed to the toxic Releases.

### 4.    Adequacy Is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Court must measure the adequacy of representation by two standards: "(1) ensure that the named plaintiff and its counsel have the ability and the incentive to represent the claims of the class vigorously, and (2) that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa. 2017); *In re Fasteners Antitrust Litig.*, 2014 WL 285076, at *6 (E.D. Pa. Jan 24, 2014) (adequacy of representation requirement "has dual concerns: to ensure that class

representatives do not have interests antagonistic to the class and that class counsel have the necessary skills and qualifications to adequately represent the class"). Both standards are met here.

In this Litigation, Plaintiffs each retained competent counsel, are actively participating in discovery, and were in communication with counsel regarding the Litigation. Plaintiffs' participation exceeds that necessary to demonstrate adequacy under Rule 23(a)(4). *See Wood*, 2020 WL 7711409, at *5 (finding adequate a class plaintiff who "represented the class capably and diligently, … provided counsel with the paperwork and information they needed to initiate this case and substantiate [plaintiff's] claims," and participated in settlement).

Co-Lead Class Counsel has also demonstrated that they too satisfy the adequacy requirements of Rule 23(a)(4). In summary, Co-Lead Class Counsel (along with Class Counsel) thoroughly investigated the class claims, promptly filed suit, participated in Limetree Bay Refining's bankruptcy to preserve class members' claims, successfully obtained injunctive relief after extensive evidentiary hearings, opposed Defendants' attempts to dismiss the litigation and to stay discovery, participated in multiple mediations, and have vigorously engaged in discovery.

**B.    The Requirements of Rule 23(b)(3) Are Satisfied**

**1.    Common Legal and Factual Questions Predominate Plaintiffs' Claims**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (citation omitted). Requiring common issues to predominate does not mean all issues must be common to every class member. *See, e.g.*, *Sullivan*, 667 F.3d at 301 ("We have never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class."); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) ("mere existence of individual issues will not of itself defeat class certification"); *In re Vitamins*

*Antitrust Litig.*, 209 F.R.D. 251, 269 (D.D.C. 2002) ("Rule 23 (b)(3) requires that common issues predominate; it does not require that common issues be dispositive."). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (cleaned up).

"[F]or purposes of inquiring into the predominance of questions of law and fact relevant to a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *Processed Egg*, 2016 WL 3584632, at *8 (citing *Sullivan*, 667 F.3d at 303). As the Third Circuit has repeatedly explained, this is a "key distinction between certification of a litigation and settlement class." *Sullivan*, 667 F.3d at 306; *see also Cmty. Bank*, 418 F.3d at 306 (the predominance test is more readily satisfied when considering a settlement-only class because "the court certifying the class need not examine issues of manageability").

Plaintiffs' claims present substantially overlapping legal claims arising out of the same underlying facts about the Refinery, Defendants' conduct, and the harms suffered. These claims belong to all members of the proposed Settlement Class. Indeed, the preliminary injunction phase of this litigation has already demonstrated that Plaintiffs will be able to utilize common evidence to prove the central issues at the heart of the Litigation. *See In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*, 2023 WL 4551435, at *6 (D.N.J. July 13, 2023) (predominance turns on the "nature of the evidence and whether the evidence used at trial to prove the *essential elements* of a plaintiff's claim is better suited for class or individual treatment.") (citation omitted) (emphasis added). Accordingly, common questions of fact and law predominate Plaintiffs' claims.

### 2.    A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication.

Rule 23(b)(3) also requires that a class action be "superior to other available methods fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). To determine superiority, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Flonase*, 284 F.R.D. at 234 (cleaned up). Factors considered with regard to superiority include "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 434–35 (3d Cir. 2016). A settlement is also deemed superior where it creates a resolution that achieves "'economies of time, effort, and expense, and promote … uniformity of decision … without sacrificing procedural fairness or bringing about other undesirable results.'" *Sullivan*, 667 F.3d at 336 (quoting *Amchem*, 521 U.S. at 615).

Here, a class action is the superior method of adjudicating and settling Settlement Class Members' claims. Settlement permits many similarly situated individual and small business Settlement Class Members to simultaneously and efficiently resolve their common claims against Settling Defendants in a single forum and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

### C.    Co-Lead Counsel Should Be Appointed as Class Counsel

Pursuant to Rule 23(g), this Court previously appointed Kerry Miller of Fishman Haygood LLP, Daniel Charest of Burns Charest LLP, and Shanon J. Carson of Berger Montague PC as Interim Co-Lead Counsel, and Lee J. Rohn of Lee J. Rohn & Associates LLC as Liaison Counsel. *See* Dkt. 528. Plaintiffs now move to finally confirm this appointment to represent the Settlement Class. Rule 23(g) specifically instructs a court to consider: "(i) the work counsel has done in

identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed R. Civ. P. 23(g)(1)(A).

Here, each consideration weighs strongly in favor of confirming the previous appointment. Co-Lead Class Counsel has and continues to commit substantial resources to identifying and investigating claims, obtaining injunctive relief for class members, opposing motions to dismiss and other attempts to thwart the litigation, retaining experts, obtaining and reviewing extensive document discovery, pursuing depositions of relevant witnesses,[6] and negotiating a favorable outcome for the Settlement Class from Settling Defendants. Co-Lead Class Counsel also has extensive experience handling complex class action litigation, including in the toxic release and environmental contamination contexts. *See* Dkt. 454.[7]

### D.    The Proposed Settlement Is Sufficiently Fair, Reasonable, and Adequate to Warrant Preliminary Approval and Authorize Dissemination of Notice

At the preliminary approval stage, "the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (citation omitted). Rather, the court considers the likelihood that the proposed settlement will ultimately be approved, taking into account whether:

> (a) the class representatives and class counsel have adequately represented the class;
> (b) the proposal was negotiated at arm's length;
> (c) the relief provided for the class is adequate, taking into account:
>> (i)     the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the

---

[6] This often involves locating and subpoenaing the targets because they are no longer employed by any Defendant.

[7] Additionally, Interim Co-Lead Class Counsel along with Liaison Counsel continue to work cooperatively with all other Class Counsel who have each played a vital role in this Litigation, including C. Jacob Gower of Gower Legal LLC, Hugh Lambert of Lambert Zainey Smith & Soso APLC, John K. Dema of Dema Law, and Marina Leonard of Colianni & Leonard, among others.

> class, including the method of processing class-member claims;
>
> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (d) the proposal treats class members equitably relative to one another.

*See* Fed. R. Civ. P. 23(e)(1) and (2). If, taking these factors and the showings made regarding class certification into account, the court concludes that the proponents have shown that "the court will likely be able to: (i) approve the proposal [for settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the court "must direct notice in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1).[8]

The Third Circuit recognizes an overriding public interest in settling complex litigation. *See, e.g.*, *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("[T]he settlement of complex litigation before trial is favored by the federal courts."); *Austin v. Penn. Dep't of Corrs.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("[T]he extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest.'") (citation omitted). Early resolution in a multi-defendant class action offers particular benefit by charting a path for negotiation with other parties. *See, e.g.*, *Linerboard*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("[E]arly settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations").[9]

The purpose of the preliminary approval inquiry "is in part to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing … futile gestures.'" *In re NFL Players*, 961 F. Supp. 2d at 714 (citation omitted). Preliminary approval

---

[8] "[A]n initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig*, 55 F.3d 768, 784 (3d Cir. 1995). These considerations align with the factors identified in Rule 23(e) that are met here.

[9] Plaintiffs are concurrently requesting a status conference with the Court to discuss additional mediation orders that may facilitate resolution with non-Settling Defendants.

"is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

At the preliminary approval stage, "the bar to meet the 'fair, reasonable, and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *In re NFL Players Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (citation omitted). The final assessment of the fairness, reasonableness, and adequacy of a settlement is a matter for the final approval hearing,[10] whereas the standard for preliminary approval is simply whether the settlement is free of obvious defects and falls within the range of possible approval so as to warrant issuance of notice to the class and scheduling of a final approval hearing. *Id.*

**(1)    The Settlement Is the Product of Arms-Length Negotiations By Counsel Who Adequately Represented the Class**

The first two factors specified under Rule 23(e)(2) concern the adequacy of the representation and whether the proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A) and (B). Here, extensive negotiations resulting in the Settlement were conducted at arm's length by advocates experienced in complex litigation, with full knowledge of the strengths and weaknesses of this Litigation (as against Settling Defendants), and who are committed to vigorous representation of the Class as demonstrated by their aggressive litigation of this case.

As demonstrated above, Co-Lead Class Counsel (along with all Class Counsel) have the qualifications and experience to lead this Litigation on behalf of Plaintiffs and the Settlement

---

[10] At the final approval stage, courts in the Third Circuit traditionally apply a nine-factor analysis to assess the fairness, adequacy, and reasonableness of a proposed class action settlement. *See, e.g.*, *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Many of these considerations are subsumed within the Rule 23(e)(2) factors discussed herein.

Class. They have a proven track record of success over decades of involvement in highly complex class action lawsuits, including environmental matters such as this one. Moreover, negotiations over the terms of the Settlement Agreement involved numerous meetings, calls, and email exchanges over the course of many months, and the Settlement was reached only after the initial briefing of dispositive motions. For its part, Co-Lead Class Counsel analyzed the challenges the putative Settlement Class faced going forward in connection with Settlement Defendants and conducted an in-depth analysis (with the help of experts) of the produced data and documents.

These efforts allowed Class Counsel to make informed demands and evaluate the strengths and weaknesses of Settling Defendants' position including in comparison to that of other Defendants. Throughout the Litigation Plaintiffs have worked to advance Class interests. They have carefully considered and support the Settlement. Class Counsel also believe the Settlement is a fair resolution of the Settlement Class's claims against Settling Defendants—a determination which has traditionally carried "'considerable weight'" with the court. *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *8 (E.D. Pa. Nov. 20, 2012). In sum, the factors identified in Rule 23(e)(2)(A)–(B) weigh strongly in favor of preliminary approval.

**(2)    The Relief Provided Is Adequate and Will Be Fairly Allocated.**

**(a)    The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and Delay of Trial and Appeal**

This initial Settlement provides meaningful all-cash relief ($17.5 million) and was achieved following nearly four years of litigation at a juncture when the costs, risks, and delay associated with trial and appeal weigh decidedly in favor of this Settlement with Settling Defendants. Absent the settlement, Settling Defendants would have vigorously challenged the

merits of Plaintiffs' claims, including through additional dispositive motions practice.[11] Litigating this Action against the Settling Defendants through class certification, summary judgment and trial thus would be costly and the outcome thereof uncertain. In contrast, the proposed Settlement provides certainty now.[12] Indeed, Settling Defendants continue to dispute Plaintiffs' allegations, do not concede liability, but are settling to avoid the litigation costs and expenses outlined above.

### (b) The Proposed Method of Processing Claims and Distributing Relief Is Fair and Effective and Treats Class Members Equitably Relative to Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all [Settlement Class members].'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (citation omitted). The method proposed for processing Claims of Eligible Claimants here is fair and effective. As described above, the Net Settlement Funds will be distributed to Settlement Class Members in accordance with a point system considering the specific nature of the harm experienced by each Class Member. This method will ensure that Class Members are compensated according to the harms they sustained due to the Incidents. This is a fair, reasonable, and adequate approach as "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citation omitted); *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*, 347 F.R.D. 113, 131 (W.D. Pa. 2024) ("Generally, courts 'consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"). As described in the Claim Form, Notice Plan, and Claimant Payment Formula, the proposed allocation plan is easily calculable, objective, and a practicable method for efficient and equitable distribution that does not require overly complicated

---

[11] Settling Defendants' motion to dismiss Plaintiffs' claims remains pending. Dkt. 642.
[12] Plaintiffs anticipate that the Settlement is just the tip of the iceberg in terms of total recovery.

proof to be submitted for a Claimant to receive a share of the Settlement.

(c) **The Terms of the Proposed Attorneys' Fees are Appropriate.**

The relevant factor under Rule 23(e)[13] concerns the terms of any proposed attorney's fees awards. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel will file a separate motion seeking an award not to exceed one-third of the Gross Settlement Fund upon approval of the Court, an amount that courts within the Third Circuit commonly find is fair, reasonable, and adequate. *See, e.g.*, *Ahrendsen v. Prudent Fiduciary Servs., LLC,* 2023 WL 4139151 (E.D. Pa. June 22, 2023) (explaining that "class counsel reasonably seeks one-third of the settlement fund … for attorneys' fees) *Katz v. DNC Servs. Corp.*, 2023 WL 2955887, at*10 (E.D. Pa. Apr. 14, 2023) (approving attorneys' fees of one-third of the settlement fund in an order granting preliminary approval of a class settlement for FLSA claims). Out-of-pocket expenses incurred to date will also be deducted from the Gross Settlement Fund after Court approval. The Notice Plan advises the Settlement Class of proposed attorneys' fees and costs so that they can lodge objections if they so choose.[14]

The Class has been adequately represented, and the Settlement was achieved as the result of an arm's-length negotiation process informed by extensive litigation. The Settlement Amount is well within the range of reasonableness and is proposed to be distributed fairly, efficiently, and consistently with what has been done in analogous cases. The Court will likely be able to approve the Settlement, which further supports preliminary approval. *See* Fed. R. Civ. P. 23(e).

## IV. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED AND EPIQ SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR

For a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[13] The Rule also addresses other agreements made in connection with the proposal; here, there are no such agreements.
[14] Indeed, the motion seeking approval of fees and costs must be submitted to this Court twenty-one (21) days before the Opt-Out and Objection Date. *See* Settlement, ¶ 34.

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *NFL Players*, 821 F.3d at 435.

The Notice Plan is robust. It includes: (1) individually mailed Short-Form Notices to the Settlement Class; (2) email notice to known addresses; (3) Publication Notice, including in local radio and print; (4) a Settlement Website that makes accessible to Settlement Class Members information regarding the Settlement and important documents regarding the Settlement, including, *inter alia*, the Long-Form Notice and Claim Form; (5) a toll-free number to provide Settlement Class Members with information regarding the Settlement; and (6) information at local Law Offices. *See* Ex. A at § VI, ¶ 13. This broad manner of providing Notice satisfies Rule 23, due process, and constitutes the best notice practicable under the circumstances and should therefore be approved. *See Stechert*, 2021 WL 5235221, at *10 (finding that notice via first-class mail, website, and toll-free phone number was "the best notice practicable under the circumstances and [wa]s reasonably calculated to provide actual notice to the Class Members"); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2017 WL 2829599, at *1 (D.N.J. June 30, 2017) (rejecting objections when notice had been sent by "direct mail, publication, internet publication and radio spots"); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 152 (D.N.J. 2013) (approving postcard, website, and publication notice). *See also* Ex. G at ¶ 44.

The proposed Notice of Settlement complies with the requirements of Rule 23(c)(2)(B). It describes the nature of the action and the claims at issue; the Settlement Class; the Settlement benefits; Settlement Class Members' rights, including the right to opt out or object; the binding effect of a class judgment; the date of the fairness hearing; and other relevant information for the

Class Members to make informed decisions. *See NFL Players*, 821 F.3d at 435; *In re Humanigen, Inc. Sec. Litig.*, 2024 WL 4182634, at *3-4 (D.N.J. Sept. 13, 2024) (approving Postcard Notices that advised of a settlement website with detailed information concerning the Settlement).

"Parties may use class notice experts or professional claims administrators to provide a class notice and otherwise administer a settlement." *Stechert*, 2021 WL 5235221, at *8 (citation omitted). Plaintiffs request that the Court appoint Epiq, an experienced and well-regarded firm that frequently handles settlement and claims administration in large complex class actions.[15] Epiq has been successfully administering the Limetree Water Program since 2023, and in that role has already assisted Plaintiffs and LBT in providing notice to eligible participants on St. Croix.

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Finally, Plaintiffs request that the Court schedule a Final Approval Hearing to consider whether the Settlement Agreement is fair, reasonable, and adequate. *See* Manual for Complex Litigation, Fourth § 21.634. At that time, Plaintiffs will ask the Court to: (i) finally approve the Settlement; (ii) certify the Class for settlement purposes; (iii) find that the Notice Plan fully complied with Rule 23 and due process mandates; (iv) authorize the parties to implement the terms of the Settlement Agreement; and (v) enter a Final Approval Order dismissing the case. To allow for sufficient time to complete the Notice Plan and afford Settlement Class Members the opportunity to exercise their rights, Plaintiffs respectfully request that the Court set the final hearing for a date at least 150 days after the date of entry of the Preliminary Approval Order.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the proposed ordered filed herewith.

---

[15] Epiq's additional relevant experience and expertise is reflected in the Epiq Declaration, Ex. G at ¶¶ 5–7.

Respectfully submitted,

DATED: April 3, 2025           BY:   */s/ Kerry J. Miller*
Kerry J. Miller, Esq.
Rebekka C. Veith, Esq.
C. Hogan Paschal, Esq.
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
kmiller@fishmanhaygood.com
rveith@fishmanhaygood.com
hpaschal@fishmanhaygood.com

DATED: April 3, 2025           BY:   */s/ Hugh Lambert*
Hugh Lambert, Esq.
J. Christopher Zainey, Esq.
Brian Mersman, Esq.
LAMBERT ZAINEY SMITH & SOSO, APLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
hlambert@lambertzainey.com
czainey@lambertzainey.com
bmersman@lambertzainey.com

DATED: April 3, 2025           BY:   */s/ John K. Dema*
John K. Dema, Esq.
LAW OFFICES OF JOHN K. DEMA, PC
1236 Strand Street, Suite 103
Christiansted, St. Croix, VI 00820

DATED: April 3, 2025           BY:   */s/ Jennifer Jones*
Jennifer Jones, Esq.
9003 Havensight Mall, Ste. 319
St. Thomas, V.I. 00802
Telephone: (340) 779-7386
jjones@vienvironmentallaw.com

Counsel for the *Boynes* Plaintiffs

DATED: April 3, 2025                    BY:___/s/ *Shanon J. Carson*_____
                                        Shanon J. Carson, Esq.
                                        Yechiel Michael Twersky, Esq.
                                        John Kerrigan, Esq.
                                        BERGER MONTAGUE PC
                                        1818 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        scarson@bm.net
                                        mitwersky@bm.net
                                        jkerrigan@bm.net

DATED: April 3, 2025                    BY:___/s/ *Lee J. Rohn*_____
                                        Lee J. Rohn, Esq.
                                        Rhea R. Lawrence, Esq.
                                        1108 King Street, Suite 3 (mailing)
                                        56 King Street, Third Floor (physical)
                                        Christiansted, St. Croix
                                        U.S. Virgin Islands 00820
                                        Telephone: (340) 778-8855
                                        lee@rohnlaw.com
                                        rhea@rohnlaw.com

                                        Counsel for the *Cotton* Plaintiffs

DATED: April 3, 2025                    BY: /s/ *Daniel H. Charest*____
                                        Warren T. Burns, Esq.
                                        Daniel H. Charest., Esq.
                                        Martin D. Barrie, Esq.
                                        Quinn M. Burns, Esq.
                                        Anna Katherine Benedict, Esq.
                                        BURNS CHAREST LLP
                                        900 Jackson Street, Suite 500
                                        Dallas, Texas 75202
                                        Telephone: (469) 904-4550
                                        wburns@burnscharest.com
                                        dcharest@burnscharest.com
                                        mbarrie@burnscharest.com
                                        qburns@burnscharest.com
                                        abenedict@burnscharest.com

DATED: April 3, 2025          BY:   /s/ Korey A. Nelson
                              Korey A. Nelson, Esq.
                              H. Rick Yelton, Esq.
                              BURNS CHAREST LLP
                              365 Canal Street, Suite 1170
                              New Orleans, LA 70130
                              Telephone: (504) 799-2845
                              knelson@burnscharest.com
                              ryelton@burnscharest.com


DATED: April 3, 2025          BY:   /s/ Timothy W. Burns
                              Timothy W. Burns
                              BURNS BAIR LLP
                              10 E. Doty Street, Suite 600
                              Madison, Wisconsin 53703
                              Telephone: (608) 286-2302
                              tburns@burnsbair.com


DATED: April 3, 2025          BY:   /s/ Vincent Colianni II
                              Vincent Colianni, II, Esq.
                              Vincent A. Colianni, Esq.
                              Marina Leonard, Esq.
                              COLIANNI & LEONARD LLC
                              2120 Company Street
                              Christiansted, VI 00820
                              Telephone: (340) 719-1766
                              vinny@colianni.com
                              vince@colianni.com
                              marina@colianni.com


DATED: April 3, 2025          BY:   /s/ C. Jacob Gower
                              C. Jacob Gower, Esq.
                              GOWER LEGAL LLC
                              1919 Pine Street
                              New Orleans, LA 70118
                              Telephone: (337) 298-9734
                              jacob@gowerlegal.com


                              Counsel for the *Shirley* Plaintiffs

DATED: April 3, 2025            BY: */s/ John K. Dema*
                                    John K. Dema, Esq. (V.I. Bar. No. 357)
                                    LAW OFFICES OF JOHN K. DEMA, PC
                                    1236 Strand Street, Suite 103
                                    Christiansted, St. Croix, VI 00820
                                    Telephone: (340) 773-6142
                                    jdema@demalaw.com

DATED: April 3, 2025            BY:   */s/ Hugh Lambert*
                                    Hugh Lambert, Esq.
                                    J. Christopher Zainey, Esq.
                                    Brian Mersman, Esq.
                                    LAMBERT ZAINEY SMITH & SOSO, APLC
                                    701 Magazine Street
                                    New Orleans, Louisiana 70130
                                    Telephone: (504) 581-1750
                                    Facsimile: (504) 529-2931
                                    hlambert@lambertainey.com
                                    czainey@lambertzainey.com
                                    bmersman@lambertzainey.com

                                    Counsel for the *Moorhead* Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Court's ECF system on April 3, 2025, which sent notice to counsel of record.

                                    */s/ Kerry J. Miller*
                                    **KERRY J. MILLER**